UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

EVERETT CHATTMAN,                    )
                                     )
          Plaintiff,                 )
                                     )
v.                                   )     No.:  3:08-CV-454
                                     )           (VARLAN/SHIRLEY)
TOHO TENAX AMERICA, INC.,            )
                                     )
          Defendant.                 )

## MEMORANDUM OPINION

This civil action is before the Court on defendant Toho Tenax America, Inc.'s Motion for Summary Judgment [Doc. 19], in which defendant requests that summary judgment be granted in favor of defendant and plaintiff Everett Chattman's claims of employment discrimination on the basis of race under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, the Tennessee Humans Rights Act, Tenn. Code Ann. §§ 4-21-101, *et seq.*, and 42 U.S.C. § 1981 be dismissed [*see* Doc. 1-2; Doc. 33].[1]  In the motion for summary judgment, defendant argues that plaintiff has not proved a prima facie claim for failure to promote on the basis of race, defendant has legitimate, nondiscriminatory reasons for its actions, and plaintiff cannot prove defendant's stated reasons are pretextual.  Plaintiff has responded in opposition [Doc. 26], stating that genuine issues of disputed material fact exist.

---

[1]Plaintiff filed his initial complaint on November 4, 2008 alleging claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* and the Tennessee Humans Rights Act, Tenn. Code Ann. §§ 4-21-101, *et seq.* [*see* Doc. 1].  On November 24, 2009, the Court granted plaintiff's motion to amend the initial complaint to add a claim under 42 U.S.C. § 1981 [*see* Doc. 23].  Plaintiff filed his amended complaint on December 25, 2009 [*see* Doc. 33].

Defendant has filed a reply [Doc. 32], and a supplemental brief [Doc. 40]. The Court has carefully considered the pending motion for summary judgment [Doc. 19] in light of the relevant law, and the parties' briefs, supporting materials, and exhibits [Docs. 19, 20, 22, 28, 32, 40]. For the reasons set forth herein, the Court will **GRANT** defendant's motion for summary judgment and **DISMISS, with prejudice**, plaintiff's claims against defendant.

## I.    RELEVANT FACTS

In September 2004, plaintiff, who is African American, began working as a shipping coordinator for defendant, a company that operates a production facility in Roane County, Tennessee (the "Roane County facility") [Doc. 33, ¶ 2; Doc. 19-2, pp. 44, 50]. On October 2, 2007, an incident occurred at the Roane County facility between plaintiff and another employee, Frank Johnson ("Johnson") [Doc. 33, ¶¶ 5-22].[2] Following this incident, Johnson reported to Ben Chandler ("Chandler"), defendant's vice president of operations, that plaintiff had wrapped him in a "bear hug" and slammed him onto the ground, injuring his back [Doc. 19-3, pp. 16-17]. Defendant asserts that Johnson was taken to a hospital and an incident report for workers' compensation was completed [Doc. 19-3, pp. 16, 21]. The parties do not dispute that defendant's company safety rules prohibit horseplay and practical jokes on the manufacturing floor of the Roane County facility [Doc. 19-2, pp. 42, 137, Ex.

---

[2]Plaintiff asserts that this incident occurred when plaintiff asked Johnson to move boxes of product out of the staging area at the Roane County facility [Doc. 33, ¶¶ 6-11]. When Johnson laughed and "raised his hand as if he was going to hit Plaintiff" and yelled something at plaintiff, plaintiff "stepped to the side of Johnson, hugged him, and, while hugging him," told Johnson that he really needed his help [*Id.*, ¶ 13]. Plaintiff asserts that he had previously joked around in such a manner with Johnson and that Johnson was laughing when plaintiff release him [*Id.*, ¶¶ 11, 15].

2, "TohoTenax America, Inc., Employee Guidebook;" Doc. 19-4, p. 20; Doc. 19-5, pp. 16-19].

Defendant asserts that Chandler and Jeff Tullock ("Tullock"), defendant's human resources manager, who is Caucasian, performed the initial investigation into the incident [Doc. 19-4, p. 10; Doc. 19-5, p. 17]. As part of this initial investigation, defendant asserts that Chandler, Tullock, and Scotty Smith ("Smith"), defendant's shipping/planning manager and plaintiff's supervisor, met with two witnesses who gave slightly different accounts as to what had occurred between plaintiff and Johnson [Doc. 19-3, pp. 22-27]. Chandler, Tullock, and Smith then met with plaintiff. It is undisputed that at this meeting, plaintiff acknowledged wrapping his arms around Johnson and stated that he might have lifted him up. However, plaintiff could not verify whether he had "squeezed" Johnson [Doc. 19-2, pp. 75-76, 93, 138; Doc. 19-3, p. 32].[3] Chandler, who was responsible for making disciplinary decisions, regarded plaintiff's conduct as serious and initially recommended that plaintiff be terminated [Doc. 19-3, pp. 30, 43]. At the end of the meeting, plaintiff was told the incident was a serious matter which could lead to termination. Plaintiff was sent home on paid suspension [Doc. 19-2, pp. 78, 107; Doc. 19-3, p. 38].

On October 2, 2007, before any decision was finalized regarding plaintiff's employment, defendant asserts that Marc Verbruggen ("Verbruggen"), defendant's president,

---

[3]In his deposition, plaintiff stated that "I'm not sure if I lifted him an inch or two off the ground." [Doc. 19-2, p. 138]. Plaintiff stated that he had his "arms around [Johnson]," but could not verify whether he had "squeezed" Johnson [*Id.*, p. 93].

called Jeff Lane ("Lane"), vice president of human resources at defendant's parent company, and asked Lane to come speak with witnesses to the incident [Doc. 22, ¶¶ 8,10; Doc. 19-5, pp. 24, 49]. Chandler and Tullock testified that Verbruggen had taken them out of the investigation and, from that point on, they had nothing to do with any investigation related to the incident [Doc. 19-3, pp. 59-60]. Verbruggen also declares that in this second investigation, Verbruggen and Lane "conducted their own interviews of the witnesses, "started from scratch," and "wanted to make sure [the second investigation] was impartial and the information was seen through a new pair of eyes" [Doc. 22, ¶ 12].

On October 4, 2007, defendant asserts that Verbruggen and Lane met with plaintiff and the witnesses [Doc. 19-5, pp. 31-33]. Both Verbruggen and Lane declare that the information given by the witnesses at the second meeting seemed different than that provided during the initial investigation [Doc. 22, ¶ 14]. Specifically, one witness could not remember exactly what happened during the incident, and the other witness stated that, since the incident, Johnson had tried to get other individuals to change their story [*Id.*, ¶ 14]. Defendant asserts that Verbruggen and Lane met with plaintiff and plaintiff again stated that he had put his arms around Johnson but had not slammed him down [Doc. 19-5 pp. 39-41].[4]

Defendant asserts that following these meetings, Lane recommended, and Verbruggen agreed, not to terminate plaintiff, but instead to give him a final written warning [Doc. 19-5, p. 56; Doc. 22, ¶ 19]. The parties do not dispute that plaintiff was told of this decision on

---

[4]Plaintiff testified that if he *had* body slammed Johnson and injured his neck and back, that would have been a terminable offense under defendant's company safety rules [Doc. 19-2, p. 138].

4

October 9, 2007 [Doc. 19-2, p. 118]. Defendant's company policy is that a final written warning remains in effect for one year after it is issued [Doc. 19-2, Ex. 9 "Associate Counseling Notice;" Doc. 19-4, p. 98]. During that one year period, an employee with a final warning is not eligible for a promotion or a pay raise [Doc. 19-3, p. 75]. Thus, plaintiff's one year period began on October 9, 2007, the date plaintiff was told of the decision, and ended on October 9, 2008 [Doc. 19-2, Ex. 9, "Associate Counseling Notice"]. Upon being informed of the final written warning decision, plaintiff returned to work and was paid for the time he had missed because of the suspension [*Id.*, pp. 107, 217]. Defendant asserts that Johnson also received a final warning and that written documentation of these final warnings were provided to both plaintiff and Johnson on December 20, 2007 [Doc. 19-2, p. 122, Ex. 9, "Associate Counseling Notice;" Doc. 19-3, p. 71; Doc. 19-4, p. 98; Doc. 22, ¶¶ 20, 23].

Plaintiff's account of the events following the incident differs. Plaintiff asserts that at the initial meeting with Chandler, Tullock, and Smith, he denied attacking Johnson and said what had happened between the two was just "horseplay" [Doc. 33, ¶¶ 5-32]. After being told of the suspension, plaintiff asserts that he objected to the decision to suspend him because he believed he had done nothing wrong as horseplay was common at the Roane County facility and because other employees, whom plaintiff asserts were all Caucasian, were never disciplined for similar behavior [Doc. 28-1, ¶¶ 3-8]. In regard to Verbruggen and Lane's second investigation, plaintiff asserts that even though Tullock knew that horseplay was common, Tullock did not share this information with Verbruggen and Lane [Doc. 19-5, p. 15; Doc. 28-1, ¶¶ 19, 27]. Plaintiff claims that Tullock refused to share this information

because Tullock is racially prejudiced against plaintiff [Doc. 28-1, ¶ 9]. Plaintiff also asserts that Verbruggen and Lane failed to ask Tullock, Smith, or other individuals who engaged in horseplay whether it was tolerated, and, because of this failure to inquire, there was no realistic, meaningful investigation into horseplay at the Roane County facility. Thus, plaintiff asserts, the decision to give plaintiff a final warning was made under a false assumption, decided in isolation, and unreasonable discipline for conduct that was universally tolerated in others, namely—other Caucasian employees [*see* Doc. 33].

Around the same time as the incident between plaintiff and Johnson, Smith, plaintiff's supervisor in the shipping department, was promoted to a new position [Doc. 19-3, p. 62]. As a result of this promotion, Chandler and Verbruggen contemplated restructuring the shipping department at the Roane County facility [*Id.*, pp. 62-64]. As part of this restructuring, Smith recommended the creation of a shipping/receiving supervisor position to Chandler and recommended that plaintiff fill the position [*Id.*, p. 62]. Despite the recommendation, Chandler asserts that he decided not to create the shipping/receiver supervisor position [*Id.*, p. 63]. Plaintiff, on the other hand, claims that Chandler would have given plaintiff a promotion to the shipping/receiving supervisor position but for the final warning which prohibited plaintiff from being promoted for one year [Doc. 28, p. 11]. However, plaintiff does not dispute that a shipping/supervisor position was never created and no employee at the company has ever occupied such a position [Doc. 19-2 p. 227; Doc. 19-3, p. 63].

On November 5, 2008, plaintiff filed his complaint, alleging that he was denied a promotion to the shipping/receiving supervisor position based on his race, and asserting claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), the Tennessee Humans Rights Act, Tenn. Code Ann. §§ 4-21-101, *et seq.* (the "THRA"), and 42 U.S.C. § 1981 ("§ 1981"). Specifically, plaintiff alleges that Tullock acted out of racial animus when he denied Verbruggen and Lane access to relevant facts surrounding the incident between plaintiff and Johnson and thus, Verbruggen and Lane failed to investigate and discover the true facts about the incident. Plaintiff asserts that Tullock's failure to inform Verbruggen and Lane of relevant information turned the decision-makers into the "cat's paw" for Tullock's racist conduct and resulted in improper and racially discriminatory discipline on plaintiff. Plaintiff also asserts that Verbruggen and Lane failed to do a meaningful investigation into the incident because they did not pursue the issue of horseplay. Thus, plaintiff argues, his final warning was improperly based on Tullock's racial prejudice and Verbruggen and Lane's lack of a meaningful investigation and resulted in plaintiff's not being given a promotion and any accompanying pay raise he would otherwise have received.

## II. ANALYSIS

### A. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, the court must look "beyond the pleadings and must assess the proof to determine whether there is a genuine issue for trial. *Burchett*, 310 F.3d at 942; *see also Matsushita*, 475 U.S. at 587. The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248.

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the fact finder. *Anderson*, 477 U.S. at 249. The judge does not weigh the evidence, judge the credibility of witnesses, nor determine the truth of the matter. *Id.* Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

## B. Plaintiff's Claims Under Title VII and the THRA

Plaintiff has alleged a claim of failure to promote based on race discrimination under Title VII and the THRA.[5]  Title VII provides that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]"  42 U.S.C. § 2000e-2(a).  The THRA has similar provisions regarding employment discrimination.  *See* Tenn. Code Ann. § 4-21-401.  The Supreme Court of Tennessee has held that "an analysis of claims under the THRA is the same as under Title VII of the Federal Civil Rights Act." *Lynch v. City of Jellico*, 205 S.W.3d 384, 399 (Tenn. 2006).  Thus, the Court equally addresses plaintiff's THRA claims in its discussion of his Title VII claims.

A plaintiff may establish a claim of racial discrimination under Title VII by presenting either direct evidence of discrimination or circumstantial evidence supporting an inference of discrimination.  *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004).  Because plaintiff has not alleged any direct evidence of discrimination based on race, the Court will apply the tripartite burden-shifting framework established by the United States Supreme Court in *McDonnell Douglas*.  *See Michael*, 496 F.3d at 593.  Under the *McDonnell Douglas*

---

[5]Plaintiff states in his complaint that he was "terminated," an allegation which typically constitutes part of an adverse employment action discrimination claim [*see* Doc. 33, ¶ 28]. *See, e.g., McDonnell Douglas Corp. v. Green*, 411 U.S. 802 (1973); *Sybrandt v. Home Depot, U.S.A., Inc.*, 560 F.3d 553, 557 (6th Cir. 2009).  However, given plaintiff's response to defendant's motion for summary judgment, in which plaintiff argues solely for his failure to promote claim and cites facts and legal authority in support of that claim [*see* Doc. 28], the Court determines that plaintiff has based his racial discrimination in employment case on a failure to promote theory.

9

framework, a plaintiff bears the initial burden of demonstrating a prima facie claim of discrimination. *Id.* If the plaintiff fulfills this burden, the defendant must then put forth a legitimate, nondiscriminatory reason for its employment action. *Id.* Finally, if the defendant meets this obligation, the burden shifts back to the plaintiff to prove that the proffered reason was pretext for race discrimination. *Id.* Throughout the burden-shifting analysis, "'[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *DiCarlo*, 358 F.3d at 415 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

To establish a prima facie claim of discrimination based on failure to promote, a plaintiff must show: (1) he or she is a member of a protected class; (2) he or she applied for and was qualified for a promotion; (3) he or she was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions. *See Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1020-21 (6th Cir. 2000) (citations omitted). Once a plaintiff has established a prima facie claim, the burden then shifts back to the defendant to articulate a legitimate, nondiscriminatory reason for its action. *Michael*, 496 F.3d at 593. If the defendant carries this burden of production, then the plaintiff must "'prove that the proffered reason was actually pretext to hide unlawful discrimination.'" *Id.* (quoting *Carter v. Univ. of Toledo*, 349 F.3d 269, 273 (6th Cir. 2003)).

10

### 1.      Plaintiff's Prima Facie Claim

Plaintiff alleges that he was denied a promotion because Verbruggen and Lane made an improper decision as a result of Tullock's racial animus towards plaintiff, who is an African American, and their own improper investigation of the relevant facts surrounding the incident. Specifically, plaintiff alleges that Tullock intentionally withheld information from Verbruggen and Lane regarding the October 2, 2007 incident and horseplay at the Roane County facility and that Lane and Verbruggen failed to properly investigate the incident and "closed their eyes" to the fact that Tullock was a racist. Thus, according to plaintiff, he was treated differently than other, Caucasian employees who engaged in horseplay, improperly disciplined, and deprived a promotion and the pay raise that came with it.

It is undisputed that plaintiff, an African American and a member of a protected class, has satisfied the first prong of a prima facie claim. The second prong of a prima facie claim requires a plaintiff to have "applied and [was] qualified for promotion[.]" *Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 719 (6th Cir. 2006). The promotion at issue in this case is the position of shipping/receiving supervisor, a position that was contemplated by Chandler, but never actually existed. Plaintiff asserts that Smith, his supervisor, recommended to Chandler that plaintiff fill this prospective position. However, defendant asserts that Chandler made the decision that the shipping department should be structured in a different way, and thus, the position was not created and Smith's recommendation had no effect. Plaintiff does not dispute that a shipping/ receiving supervisor position never existed and does not dispute that no employee currently holds such a position [Doc. 19-2, p. 227;

11

Doc. 19-3, p. 63]. Plaintiff also does not dispute that he never applied for this position and never applied for any other promotion during the 2007-2008 time period [Doc. 19-2, pp. 157-58].[6] Further, plaintiff has acknowledged that he is unsure whether a specific position existed in 2007 for which he would have wanted to apply [*Id.*, p. 243].

Regardless of whether Chandler contemplated creating the shipping/receiving supervisor position, or contemplated placing plaintiff in such a position, the fact that this position was never created controls the Court's determination of this prong. A possibility of a position, Smith's recommendation of plaintiff for that position *if* that position had been created, and Chandler's alleged acknowledgment of Smith's recommendation is insufficient to prove that plaintiff "applied" for the shipping/receiving supervisory or any other position, especially when plaintiff has acknowledged not applying for any promotion [*see* Doc. 28-2, ¶ 16]. Accordingly, plaintiff has not satisfied the second prong of his prima facie claim.

---

[6]Plaintiff testified that he never applied for a promotion, but testified that Smith "agreed to request a promotion for [plaintiff]." [Doc. 19-2, pp. 157-58]. Plaintiff also testified that Smith requested the promotion, and that Tullock "shot it down." [*Id.*]. However, Chandler, and not Tullock, made the decisions relative to promotions and restructuring in the shipping department [Doc. 19-3, pp. 63-64; Doc. 22, ¶ 27]. Plaintiff has submitted a declaration from Smith in which Smith declares that following Smith's recommendation, Smith "thought at that point that Chandler had agreed to promote Plaintiff." [Doc. 28-2, ¶ 15]. Inconsistently, Smith also states in this declaration that "after Chandler agreed to Plaintiff being promoted" and Chandler "initially agreed" to plaintiff's promotion [*Id.*, ¶¶ 16, 20]. However, Smith also stated, in a deposition, that he did not know who made the decision to restructure the department after he was promoted [Doc. 32-2, pp. 97-99]. Given Smith's inconsistent statements, the undisputed fact that the position was not actually created, and Chandler's testimony that he rejected Smith's recommendation, the Court determines that, at most, all Smith's declaration shows is that Chandler agreed to consider plaintiff for the position, *if* the position was created.

The third prong of a prima facie claim requires that a plaintiff be "considered for and denied the promotion[.]" *Grizzell*, 461 F.3d at 719. Here, plaintiff cannot prove that the position of shipping/receiving supervisor was ever created. Defendant has acknowledged that the position was considered by Chandler and that it was ultimately rejected because Chandler determined the shipping department should be restructured differently. Plaintiff has claimed that Chandler considered plaintiff for the shipping/receiving supervisor position *if it was created*. However, even assuming Chandler had intended to promote plaintiff to this position, *had the position been created*, plaintiff has provided no evidence that the position *was* created, and thus, provided no evidence that plaintiff was "considered" for a promotion. The possibility of a new position to which plaintiff might be promoted is not enough to satisfy this third prong. Smith's statement in his declaration, that he "thought" Chandler agreed with his recommendation to promote plaintiff only shows Smith's opinion of whether he thought Chandler had agreed with him to promote plaintiff *if* the position was created [Doc. 28-2, ¶ 15]. However, because it is undisputed that the position was not created, and undisputed that plaintiff did not apply for this position or any other promotion, the relevant decision-maker in regard to promotions—Chandler—was unable to consider plaintiff for a promotion as no such promotional opportunity actually existed. Accordingly, plaintiff has not satisfied the third prong of his prima facie claim.

The fourth prong of a plaintiff's prima facie claim requires that "other employees of similar qualifications who were not members of the protected class received promotions." *Grizzell*, 461 F.3d at 719. As stated previously, it is undisputed that defendant never created

13

a shipping/receiving supervisor position. Plaintiff has also acknowledged that he is unaware of anyone who is currently occupying or ever occupied such a position. Plaintiff has brought no evidence to the Court's attention that other, non-protected employees of similar qualifications received promotions and therefore, plaintiff has failed to satisfy the fourth prong of his prima facie claim. Accordingly, after considering the proof on all four prongs, the Court concludes that plaintiff has failed to establish a prima facie claim of racial discrimination based on failure to promote.

## 2. Defendant's Legitimate, Nondiscriminatory Reason

Notwithstanding the Court's determination that plaintiff has not proven a prima facie claim for racial discrimination, the Court will now determine, *arguendo*, whether defendant has satisfied its burden of production and articulated legitimate, nondiscriminatory reasons for its actions in issuing the final warning and not promoting plaintiff. *Michael*, 496 F.3d at 593.

First, in regard to defendant's decision to issue the final written warning, defendant asserts that Lane and Verbruggen's decision was legitimate and nondiscriminatory because defendant's safety rules prohibit horseplay and practical jokes on the manufacturing floor and because the safety rules also state that such conduct can result in a termination. An employee's work violations may constitute a legitimate, nondiscriminatory reason for an adverse employment decision. *See Walborn v. Erie County Care Facility*, 150 F.3d 584, 588 (6th Cir. 1998) (finding a legitimate nondiscriminatory reason when a plaintiff was reprimanded for un-excused absences and the company's policy stated that employees with

un-excused absences were subject to discipline).  Plaintiff has also acknowledged putting his arms around Johnson and acknowledged that he might have lifted Johnson up off the ground and might have squeezed him.  This conduct could reasonably fall within defendant's prohibition against horseplay in the company safety rules.  Accordingly, because plaintiff could have been terminated for his conduct under the safety rules, the Court determines that the decision to give plaintiff a final warning for his conduct constitutes a legitimate, nondiscriminatory reason.

Second, in regard to defendant's decision not to create the shipping/receiving supervisor position, defendant asserts that Chandler did not award plaintiff the position because it was never created.  Further, defendant asserts that Chandler had already made up his mind how to restructure the shipping department  before Smith recommended plaintiff for the position.[7]  In analyzing the business decisions of an employer, the Sixth Circuit does not require "that the decisional process used by the employer be optimal or that if left no stone unturned.  Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action."  *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998); *see also Burdine*, 450 U.S. at 256.  Thus, a court will not focus on the soundness of an employer's business judgment or micro-manage the process used by employers in making their employment decisions.  *Smith*, 155 F.3d at 807;

---

[7]Even if Chandler made this decision following Smith's recommendation to Chandler, plaintiff has not alleged that Chandler had any racial animus and Chandler's decision would fall squarely within an employer's business judgment.  *See Smith*, 155 F.3d at 807.

15

*Wilkins v. Eaton Corp.*, 790 F.2d 515 (6th Cir. 1986) (stating that "the fact finder may not focus on the soundness of the employer's business judgment"). Accordingly, discerning no evidence to the contrary, the Court will not second guess Chandler's decision not to create the position.

### 3. Pretext

Having found that defendant has articulated legitimate, nondiscriminatory reasons for its decisions, the Court will now determine whether those proffered reasons are pretext to hide unlawful discrimination. *Michael*, 496 F.3d at 593 (quoting *Carter*, 349 F.3d at 273). A plaintiff can establish pretext by demonstrating that the defendant's proffered reason: (1) has no basis in fact; (2) did not actually motivate the defendant's challenged conduct; or (3) was insufficient to warrant the challenged conduct. *Dews*, 231 F.3d at 1021 (quotes omitted); *see also Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084-85 (6th Cir. 1994).

To begin, the Court notes that Tullock is the only individual whom plaintiff has alleged acted with racial animus. Plaintiff has not alleged any racial bias or discriminatory motive against Chandler, who made the decision not to create the position [Doc. 19-2, pp. 179, 201; Doc. 19-3, pp. 63-64]. Plaintiff has also not alleged any racial bias or discriminatory motive against Verbruggen or Lane, who made the decision to give plaintiff

16

the final warning [Doc. 19-2, p. 131; Doc. 19-5, p. 56; Doc. 22, ¶ 19].[8] While plaintiff has alleged that Verbruggen did not properly consider certain information about horseplay, and alleged that Verbruggen did not consider a racist comment by Tullock unrelated to the incident between plaintiff and Johnson, such allegations are not allegations of improper racial basis or improper discriminatory motives.

As to the first test for establishing pretext, plaintiff cannot prove defendant's actions had no basis in fact. First, plaintiff has not alleged any evidence that Chandler's decision was not based in fact and pursuant to his own business judgment. Second, plaintiff has admitted to engaging in the conduct which provided the basis for Verbruggen and Lane's decision to issue the final warning, admitted that horseplay is a violation of the safety rules, and admitted that if the decision-makers believed he had picked Johnson up, body-slammed him to the ground, and injured his back, this would be a terminable offense [Doc. 19-2, 137-38]. Further, plaintiff has not provided evidence of other similar horseplay situations, not resulting in discipline, in which an employee reported an injury, was taken to a hospital, and

---

[8]Plaintiff was asked, in his deposition, whether Verbruggen or Lane treated him fairly [Doc. 19-2, p. 131]. Plaintiff replied that both had treated him fairly, as far as he knew [*Id.*]. However, in his response, plaintiff asserts that Verbruggen's "uninterested responses" concerning Tullock's alleged racial animus would support "a reasonable jury determination that Verbruggen himself was a racist" [Doc. 28, p. 14]. The Court disagrees. Plaintiff refers to a "racial joke" that Tullock made and Verbruggen was aware of, and several allegedly racist comments that Tullock made approximately a year after the first joke [Doc. 22, ¶¶ 35-41]. However, awareness of Tullock's alleged comments, unconnected to the incident between plaintiff and Johnson, does not give rise to proof of a reasonable inference that Verbruggen himself acted with racial animus towards plaintiff regarding Verbruggen's decision to give plaintiff the final warning—a decision in which Tullock had no involvement.

17

a workers' compensation claim was filed—all of which occurred following the incident between plaintiff and Johnson.

The second test for establishing pretext requires additional proof which "tend[s] to prove that an illegal motivation was more likely than that [reason] offered by the defendant." *Manzer*, 29 F.3d at 1084. Plaintiff asserts that he will present evidence that Chandler would have given plaintiff the promotion, but for plaintiff's final warning, and that Chandler had agreed to create the position and to promote plaintiff [Doc. 29-2, ¶¶ 14-15]. However, Smith's statement in his declaration, that he "thought" Chandler had agreed with his recommendation to promote plaintiff, implies neither "but for" causation nor pretext. *See Ridenour v. Lawson Co.*, 791 F.2d 52, 57 (6th Cir. 1986) (stating that, in a reduction in force context, an employee does not have a duty to transfer employees to other positions within the company); *Hartsel v. Keys*, 87 F.3d 795, 801 (6th Cir. 1996) (affirming summary judgment for the defendant when the plaintiff admitted that her supervisor never said or did anything to indicate a discriminatory motive or bias). Moreover, plaintiff has not alleged that Chandler had any racial bias or discriminatory motive in deciding not to create the position and has not alleged any proof of an additional, illegal motive on the part of Verbruggen or Lane, agreeing that they treated him fairly.

As to the third test for establishing pretext—whether the reasons given by defendant were insufficient to motivate the challenged conduct, the plaintiff must present "evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends

motivated its discharge of the plaintiff." *Manzer*, 29 F.3d at 1084. In regard to Chandler's decision not to create the position, plaintiff has not shown that other, non-protected but similarly situated employees obtained promotions while plaintiff did not.

In regard to the decision to give plaintiff the final warning, plaintiff asserts that other employees at the Roane County facility—Caucasian employees—engaged in horseplay and did not face disciplinary action. In support, plaintiff states that Smith and another employee, Connie Jackson ("Jackson"), described horseplay as being a common part of the culture at the Roane County facility [Doc. 22, ¶ 30; Doc. 28-2, ¶¶ 6-8]. Plaintiff also describes three incidents in which Caucasian employees engaged in horseplay but no disciplinary action was taken: (1) Johnson, coming into plaintiff's office and grabbing him "to scare him or joke with him;" (2) Johnson, punching plaintiff, driving a forklift towards plaintiff, and pretending like he was going to run over plaintiff; and (3) Tim Poach, a co-worker, punching plaintiff on the shoulder [Doc. 28, pp. 6-7]. Defendant asserts that these incidents are distinguishable from the October 2, 2007 incident between plaintiff and Johnson because Johnson reported his injury to management, Johnson was taken to a hospital, and a workers' compensation claim was filed. Further, both Smith and plaintiff stated that a situation in which an employee had to go to the doctor or file a workers' compensation claim was "more serious." [Doc. 19-2 & Doc. 32-1, pp. 173-74; Doc. 32-3, pp. 44-45]. Moreover, Johnson, the Caucasian employee who engaged in the horseplay with plaintiff and who is mentioned in the two other incidents discussed by plaintiff, was also given a final warning for his conduct arising out of the October 2, 2007 incident.

Given these distinguishing characteristics—plaintiff's statements that Chandler, Verbruggen and Lane treated him fairly and did not act with racial animus, Johnson's report of the horseplay, Johnson's injury and the workers' compensation claim, the discipline imposed on Johnson, and because plaintiff has produced no other similar incident in which an injury was reported and a workers' compensation claim filed—the Court finds that plaintiff has not proven that defendant's stated reasons were pretextual.

### 4. The Theory of "Cat's Paw" Liability

The Sixth Circuit has held that a plaintiff may challenge an employer's improper treatment of him even if the ultimate decision-maker was neutral and not motivated by racial animus. *See Madden v. Chattanooga City Wide Serv. Dept.*, 549 F.3d 666, 677 (6th Cir. 2008); *see also Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 877 (6th Cir. 2001).[9] Such a situation refers to what is known as a "cat's paw" theory of liability in which a biased subordinate employee, who lacks decision-making power, influences the unbiased decision-maker to make an adverse hiring decision, thereby hiding the subordinate's discriminatory intent. *EEOC v. BCI Coca-Cola Bottling, Co.*, 450 F.3d 476, 484 (10th Cir. 2006); *see also Arendal v. City of Memphis*, 519 F.3d 587, 604 n.13 (6th Cir. 2008).[10]

_____

[9]In *Madden*, the Sixth Circuit upheld, following a bench trial, the district court's determination that the discriminatory animus of reporting supervisors could be imputed to the ultimate decision-makers because "a reasonable factfinder could find a causal nexus between the ultimate decision maker's decision to terminate [the plaintiff] and his supervisor's discriminatory animus." *Madden*, 549 F.3d at 677.

[10]"When an adverse hiring decision is made by a supervisor who lacks impermissible bias, but that supervisor was influenced by another individual who was motivated by such bias . . . the employer may be liable under a 'rubber-stamp' or 'cat's paw' theory of liability." *Arendal*, 519 F.3d at 604 n.13.

Here, plaintiff has alleged that Tullock, acting with racial animus, reported plaintiff's horseplay to Verbruggen and Lane, the ultimate decision-makers, without also reporting that horseplay was common among other employees. Plaintiff asserts that even though Verbruggen and Lane performed their own investigation into the incident, they relied on Tullock, and thus "acted as the conduit of [Tullock's] prejudice—his cat's paw." *Madden*, 549 F.3d at 677 (citation omitted). Thus, plaintiff asserts, because Tullock was in a position to shape Verbruggen and Lane's decision, and because their decision shaped Chandler's decision, there are genuine issues of material fact as to whether plaintiff was denied a promotion based on his race.

When a plaintiff challenges an employment decision as motivated by a supervisor's discriminatory animus, the plaintiff must offer evidence of a "causal nexus" between the ultimate decision-maker's decision and the supervisor's discriminatory animus. *Madden*, 549 F.3d at 677; *see also Wilson v. Stroh Cos.*, 952 F.2d 942, 946 (6th Cir. 1992). Here, the relevant decisions the Court will consider are (1) Chandler's initial recommendation that plaintiff be terminated; (2) Verbruggen and Lane's decision that plaintiff be placed on final warning status; and (3) Chandler's decision not to create the position and promote plaintiff.

As to the first and second decisions, it is undisputed that Chandler was the decision-maker in regard to Chandler's initial recommendation to terminate plaintiff, and Chandler's decision not to create the position of shipping/receiving supervisor. As to Chandler's initial termination recommendation, defendant asserts that Chandler did not rely upon any information Tullock provided but participated in the same interviews as Tullock and relied

21

upon his own assessment of the situation in making his recommendation. Plaintiff has not provided any evidence to the contrary. As to Chandler's decision not to create the position, as discussed previously by the Court, this was a business judgment decision and plaintiff has provided no evidence that it was racially motivated. Accordingly, the Court finds no causal nexus between Tullock's alleged racial animus and Chandler's initial recommendation that plaintiff should be terminated or Chandler's decision not to create the position.

The Court now turns to Verbruggen and Lane's decision to issue a final written warning instead of Chandler's recommendation that plaintiff be terminated. Plaintiff asserts that Tullock was in a position to shape Verbruggen and Lane's decision regarding plaintiff, that Tullock did not inform them that horseplay was common, and that Verbruggen and Lane based their decision on improper considerations influenced by the information provided by Tullock, a racist subordinate. Defendant, on the other hand, asserts that Verbruggen and Lane took Chandler and Tullock completely out of their investigation, conducted new interviews with the witnesses, reached their own conclusions, and arrived at their decision by an independent investigation, without any reliance on any information provided by Tullock. Further, defendant asserts, Verbruggen and Lane rejected Chandler's initial recommendation to terminate plaintiff because they were troubled by inconsistencies in the stories of the witnesses.

While plaintiff has alleged that Tullock was in a position to influence Verbruggen and Lane's decision and that they "relied" on such information, plaintiff has not provided any evidence showing any reliance or influence. To the contrary, Verbruggen, Lane, Chandler,

and Tullock all state that the second investigation was separate from the first investigation and that Verbruggen and Lane essentially looked at the facts surrounding the incident with new eyes. This is supported by defendant's assertions that Verbruggen and Lane re-interviewed the witnesses, reversed Chandler's previous recommendation to terminate plaintiff's employment, and also decided to give Johnson, who is Caucasian, a final warning. Beyond the statement that Tullock influenced Verbruggen and Lane's decision, or helped shape it, plaintiff has failed to show any evidence of a causal connection between Tullock's racial animus and Verbruggen and Lane's decision.

### C.    Plaintiff's Claim Under § 1981

Plaintiff also asserts a claim under § 1981 for employment discrimination based on race [*see* Doc. 33]. Section 1981 provides that:

> All persons . . . shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal treatment of all laws and proceedings for the security of persons and property as enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses and extractions of every kind, and to no other.

42 U.S.C. § 1981. The general elements of a prima facie claim under § 1981 are the same as for actions arising under both Title VII. *See Noble v. Brinkler Int'l, Inc.*, 391 F.3d 715, 720 (6th Cir. 2004). However, under § 1981, a plaintiff must demonstrate intentional or purposeful discrimination throughout the prima facie claim and in the pretextual analysis. *General Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 389-90 (1982); *see also Brown v. Ohio State Univ.*, 616 F. Supp. 2d 740, 749 (S.D. Ohio 2009). In order to

defeat a request for summary judgment on a § 1981 claim, a plaintiff is required to prove purposeful discrimination by specific evidence of discriminatory purpose. *Anderson*, 477 U.S. at 256 (stating that the nonmoving party cannot rest on mere allegations or denials and requiring specific facts showing that there is a genuine issue for trial).

The Court can discern no such evidence of intentional or purposeful discrimination on the basis of the pleadings and supporting evidence submitted by the parties. Tullock was not the decision-maker in regard to any decision regarding plaintiff's employment and plaintiff has not shown any racial bias or discriminatory motive on the part of Chandler, Verbruggen, or Lane. Plaintiff's allegations that Verbruggen and Lane were influenced by Tullock's alleged racism does not constitute evidence of purposeful discrimination, particularly because Verbruggen and Lane performed their own independent investigation. And finally, plaintiff's assertion that Verbruggen did not properly consider the information he had regarding horseplay does not constitute evidence of purposeful racial discrimination,[11] but an assertion that Verbruggen should have made a different decision based on information available to him. This is not an assertion that Verbruggen and Lane's decision was improperly based on race, but an argument pertaining to Verbruggen's focus in his decision-making process. A disagreement with the weight Verbruggen attached to various pieces of

---

[11]Verbruggen also stated that he had received information regarding horseplay from Jackson and Smith and that such information did influence his decision in conducting a second independent investigation [Doc. 22, ¶¶ 8-10].

information available to him, without evidence of purposeful discrimination based on race, is insufficient to support a claim for purposeful racial discrimination under § 1981.

## III.     CONCLUSION

Accordingly, and for the reasons set forth herein, defendant Toho Tenax America, Inc.'s Motion for Summary Judgment [Doc. 19] is hereby **GRANTED** and plaintiff Everett Chattman's claims of employment discrimination on the basis of race under Title VII, the THRA, and § 1981will be **DISMISSED with prejudice**.  The parties shall bear their own costs.  An appropriate order will be entered.

ORDER ACCORDINGLY.


s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE